NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL KELLY AND JOHN SALVATO, <br><br> Plaintiffs, <br><br> v. <br><br> ESTATE OF MICHAEL ARNONE, by Isabella Ahern, Executrix; ISABELLA AHERN; TONY TESTA; PHIL GRANITO; TOMMY PETILLO; JIMMY SPINELLI; DUPREES ENTERTAINMENT, LLC; RON O'BRIEN ENTERPRISES, LLC; and PYRAMID MUSIC, LLC, <br><br> Defendants. | Civil Action No. 08-6046 (SDW) <br><br> **OPINION** <br><br> August 3, 2009 |

**WIGENTON**, District Judge

Before this Court is Defendant, Estate of Michael Arnone's ("Estate") Motion to Dismiss Plaintiffs, Michael Kelly ("Kelly") and John Salvato's ("Salvato"), complaint pursuant to Fed R. Civ. P. 12(b)(6) and Fed R. Civ. P. 9(b). This Court has jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367(b). Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c). The Motion is decided without oral argument pursuant to Fed. R. Civ. P. 78. For the following reasons, Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Plaintiff, Kelly's Motion to Amend the Complaint is **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 1960, Salvato, Kelly, Michael Arnone ("Arnone"), Thomas Bialoglow ("Bialoglow") and Joseph Santollo ("Santollo") founded a singing group called "The Parisiens". (Am. Compl.

¶ 1.) Throughout the 1960s, The Parisiens presented recordings, featuring Kelly as lead singer, to record companies. (*Id*.) Shortly thereafter, Kelly left The Parisiens and signed a solo recording contract with Columbia Records. (*Id*. at ¶ 2.) Salvato replaced Kelly with Joseph Canzano ("Canzano"). (*Id*.) Sometime between 1960 and 1962, the band changed its name to the Duprees and signed a record deal with Coed Records.[1] (*Id*.) By 1962, the Duprees had released several successful songs. (*Id*.) In August 1963, Arnone, Salvato, Santollo, and Canzano filed a "Certificate of Conducting Business As Partners" with the County Clerk and Clerk of the Supreme Court for the County of New York under the name "Duprees". (*Id*. at ¶ 4.) In early 1965, Canzano and Bialoglow left the group and Kelly rejoined as lead singer. (*Id*. at ¶ 3.) On May 1, 1965, Kelly, Salvato, Arnone, and Santollo, both individually and as "The Duprees", signed an Artist Recording Agreement with Kama-Sutra Productions, Inc., which entitled all members of the Duprees, including Kelly and Salvato, to royalties.[2] (Krenkel Cert., Ex. "A".) Also in 1965, Kelly, Salvato, Arnone, and Santollo, both individually and as "The Duprees", signed an exclusive agency contract with Associated Booking Corp. (Krenkel Cert. Ex. "B".) On June 16, 1965, Kelly, Salvato, Arnone, and Santollo signed a publishing agreement with Tender Tunes Music Co., Inc. which provided each member, including Kelly and Salvato, with equal shares of royalties. (Krenkel Cert., Ex. "C".)

In 1966, Canzano was officially released from the partnership. (Am. Compl. ¶ 6.) Later that year, Richard Asher, the Duprees' attorney, prepared, but did not file, a service mark application for the name "Duprees". (*Id*.) In April 1968, Kelly, Salvato, Arnone, and Santollo, both individually and as "The Duprees", signed a one year "Artist Recording Agreement" and a five year management agreement with Colossus Promotions Inc., a company owned and

---

[1] The Complaint does not specify if Kelly was with the band when the name was changed from "The Parisiens" to "The Duprees".
[2] This agreement was assigned to Columbia Records for an unknown length of time. (Am. Compl. ¶ 5.)

managed by Jerry Ross ("Ross") (Krenkel Cert., Ex. "E", "G".)  On October 20, 1969, Kelly, Arnone, Salvato and Santollo incorporated the KASS Music Corp. in New Jersey to use in connection with their music.[3]  (Krenkel Cert., Ex. "D".)  The KASS Music Corp. issued each member an equal share of stock.  (Am. Compl. ¶ 7.)  On March 31, 1972, Kelly, Salvato, Arnone, and Santollo extended their April 1968 recording agreement with Colossus Promotions, Inc., until March 31, 1973.  (Krenkel Cert., Ex. "F".)  On July 1, 1975, Kelly, Salvato, Arnone, and Santollo, both individually and as "The Duprees", entered into an "Exclusive Artist Recording Agreement" with Jerry Ross Music Corp., Inc., which entitled all members of the Duprees to an equal share of royalties.[4]  (Krenkel Cert., Ex. "H".)  In 1976, Kelly, Salvato, Arnone, and Santollo, both individually and as "The Duprees", extended their recording agreement with Jerry Ross Music Corp., Inc. through July 1, 1977.  (Krenkel Cert., Ex. "I".)  Also in 1976, the Duprees' new attorney, Martin E. Rinsberg, Esq., attempted to register the mark "Duprees".  (Am. Compl. ¶ 6.)  For reasons unbeknownst to the Plaintiffs, the 1976 attempt at registration was never completed.  (*Id.*)

In early 1979, Kelly left the Duprees, citing Arnone's alleged alcoholism (Krenkel Cert., Ex. "L", ¶ 17.)  Later in 1979, Arnone filed an application with the USPTO to register the mark "Duprees" in his own name.  (Krenkel Cert., Ex. "K".)  On July 7, 1981, Arnone was awarded Registration No. 1,160,365 for the mark DUPREES "For: ENTERTAINMENT SERVICES – NAMELY MUSICAL PERFORMANCES RENDERED BY A GROUP, in CLASS 41 . . . ."  (Hawkins Decl., Ex. "B".)  From 1979 until the issuance of the registration for the mark on July 7, 1981, Salvato and Arnone continued to perform together as original members of the "Duprees".  (Am. Compl. ¶ 13.)

---

[3] The acronym KASS stands for Kelly, Arnone, Salvato and Santollo.  (Amend. Compl. ¶ 7.)
[4] Kelly's name appears throughout the contract, however his signature does not appear on it.

In 1996, the compact disc "The Duprees, For Collectors Only", which includes songs recorded with Kelly, was released and mass marketed both in record stores and online. (*Id*. at ¶15; Krenkel Cert., Ex. "L".)  On June 25, 2002, "The Duprees All-Time Greatest Hits CD" was released; it features Kelly on its cover and is marketed and sold on the Tower Records online store. (Am. Compl. ¶ 15; Krenkel Cert., Ex. "M".)  Many Duprees' songs featuring Kelly are currently sold online in the Apple iTunes music store. (*Id*.)  Kelly is allegedly forming a group named "The Duprees" and intends to use the name for live performances and sound recordings. (Am. Compl. at ¶ 27.)  Several websites, such as Billboard.com and Duprees.com recognize Kelly as an original member of the group. (*Id*. at ¶¶ 14, 27.)  Jerry Ross continues to market the Duprees name and recordings, the royalties to which Kelly and Salvato are entitled. (Krenkel Cert., Ex. "J".)

**Litigation Related to the Duprees**

On June 16, 1989, Arnone brought an action for trademark infringement and unfair competition against Salvato. *Arnone v. Salvato*, No. 89-2517 (D.N.J. June 16, 1989) (MTB).  On April 7, 1992, the parties entered into a stipulation of settlement ("consent decree") which was so ordered by then District Court Judge Maryanne Trump Barry. *Arnone v. Salvato*, No. 89-2517 (D.N.J. April 7, 1992) (MTB).  The consent decree ordered that "the parties [(Arnone and Salvato)] hereto are forever discharging and releasing each other from any and all matters involving the use of the trade name 'THE DUPREES . . . .'" *Id*. at ¶ 1.  The consent decree also states:

> 2. Michael Arnone is the owner U.S. Trademark No. 1,160,365 for the service mark THE DUPREES to identify entertainment services, namely a singing group, and has unqualified and exclusive right to use throughout the United States the name or mark THE DUPREES to identify a musical performing group, and enjoy the exclusive good will deriving therefrom.

4

> 3. John Salvato and those acting in concert or participation with him are permanently enjoined from representing to any third party, directly or indirectly, that he has the right to use the name or mark "THE DUPREES" or the word "Duprees" alone or together with any words except as provided herein to identify any musical performing group other than the musical performing group owned or controlled by Michael Arnone; and John Salvato will not knowingly authorize any third party to represent that Salvato or his musical performing group is THE DUPREES.

*Id.* at ¶¶ 2-3.

Arnone passed away in 2005 and his estate became owner of U.S. Trademark No. 1,160,365. On January 5, 2007, the Estate filed an action for trademark infringement against co-defendants Tony Testa, Ron O'Brien, Ron O'Brien Enterprises, LLC, and Pyramid Music, LLC, alleging that singers hired by Arnone before his death were performing as The Duprees without authorization. *Estate of Arnone v. Testa*, No. 07-0081 (D.N.J. Jan. 5, 2007) (FLW). On September 11, 2007, the Estate filed an amended complaint adding Defendants Phil Granito, Tommy Petillo, Jimmy Spinelli, and Duprees Entertainment, LLC. *Estate of Arnone v.* Testa, No. 07-0081 (D.N.J. Sept. 11, 2007). On September 16, 2008, Kelly and Salvato filed a motion to intervene in the case. *Estate of Arnone v. Testa*, No. 07-0081 (D.N.J. Sept. 16, 2008) (FLW). The case settled on November 20, 2008, prior to the motion to intervene being decided. *Estate of Arnone v. Testa*, No. 07-0081 (D.N.J. Nov. 20, 2008) (FLW).

On December 19, 2007, while *Estate of Arnone v. Testa* was ongoing, Salvato filed a motion to vacate the consent decree entered in 1992. *Arnone v. Salvato*, No. 89-2517 (D.N.J. Dec. 19, 2007) (SRC). On February 27, 2008, United States District Judge Stanley R. Chesler heard oral arguments and denied the motion to vacate. *Arnone v. Salvato*, No. 89-2517 (D.N.J. Feb. 27, 2008) (SRC). Judge Chesler noted during argument that "part of this settlement was injunctive and part of it was declaratory, and part of the declaration is that [Salvato] gave up all

5

rights to the name Duprees, period. That's not injunctive. That was an agreement." (Hawkins Decl., Ex. "G", Transcript of Oral Argument, 9:15-18). Judge Chesler further stated that:

> In [the] consent decree Mr. Salvato gave up all claims to the trade name The Duprees. That was unequivocally done. He also agreed to an injunction barring him from using The Duprees except in a very limited manner. He was permitted essentially to identify himself as having been formerly a member of The Duprees in connection with his performances.

(*Id*. at 16:5-11.) Judge Chesler also admonished counsel for bringing the application to vacate settlement, noting that it "in the Court's view[,] border[ed] on a Rule 11 violation." (*Id*. at 18:2-3.)

On December 5, 2008, Plaintiffs filed a six count complaint against the Estate asserting: (1) a violation of the New Jersey Deceptive Practices in Musical Performances Law ("DPMPL"), N.J.S.A. § 2A:32B-1, *et seq.* (on behalf of Kelly and Salvato); (2) a violation of the New Jersey unfair competition statute, N.J.S.A. § 56:4-1, *et seq.* (on behalf of Kelly and Salvato); (3) a request for cancellation of Arnone's trademark for fraudulent procurement under Section 14(3) of the Lanham Act (on behalf of Kelly); (4) a claim for declaratory judgment pursuant to 28 U.S.C. § 2201 showing that Kelly and Salvato have superior common law rights to the name "The Duprees" (on behalf of Kelly and Salvato); (5) a claim for damages based on fraudulent procurement of the Duprees trademark pursuant to 15 U.S.C. § 1120 (Section 38 of the Lanham Act) (on behalf of Kelly); and (6) a claim for common law trademark infringement and unfair competition (on behalf of Kelly).

On March 16, 2009, the Estate filed a Motion to Dismiss, arguing: (1) Salvato's claims are barred by the consent decree; (2) the DPMPL claims should be dismissed because they do not apply to holders of federally registered trademarks; and (3) Kelly's claims should be dismissed because (i) he lacks standing, (ii) he fails to satisfy the heightened pleading standard of Fed. R.

Civ. P. 9(b), (iii) his damages claims are barred by the statute of limitations, and (iv) his damages claims are barred by laches.

**DISCUSSION**

### Motion to Dismiss

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002). Additionally, the "grounds of [the moving party's] entitle[ment] to relief require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). Further, a complaint must have "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

### The Consent Decree Between Salvato and Arnone

"[I]t is well settled . . . that a judgment or decree, though entered by consent or agreement of the parties, is res judicata to the same extent as if entered after contest." *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1429 (3d Cir. 1994) (internal quotations omitted). In other words, a consent decree entered into by the parties effectively functions as an adjudication on the merits. As Judge Chesler noted in *Arnone v. Salvato*, Salvato, "gave up all claims to the trade name The Duprees." (Hawkins Decl., Ex. "G", Transcript of Oral Argument, 16:5-11.) Hence, Salvato relinquished, in perpetuity, his rights to

7

the Duprees name. Because Salvato "gave up all claims to the trade name The Duprees[,]" he cannot move for a declaratory judgment as to common law rights. Simply put, Salvato already declared, in the consent decree, that he has no rights to the name The Duprees. Consequently, Salvato cannot maintain his unfair competition or DPMPL claim because he has no rights to the Duprees name. Since Salvato has no right to the name, he cannot show an injury resulting from the Estate's use of the name, and thus lacks standing to pursue an unfair competition or DPMPL claim. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("A federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action.") (internal quotations omitted). Thus, Defendant's Motion to Dismiss is granted as to all of Salvato's claims.

**Fed. R. Civ. P. 9(b)**

Kelly and Salvato's claims sound in fraud. As such, "pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)). In order "[t]o satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id*.

To allege fraudulent procurement of a trademark under Section 14 of the Lanham Act, a party "must adduce evidence that the registrant actually knew or believed that someone else had a right to the mark." *Marshak v. Treadwell*, 240 F.3d 184, 196 (3d Cir. 2001). Here, Plaintiffs have produced a twenty-four page, fifty-six paragraph complaint asserting numerous factual allegations such as: (1) the dates on which multiple contracts and agreements were entered into,

8

(2) the dates by which Arnone would have known of Plaintiffs' alleged rights in the mark, and (3) the approximate date on which the alleged fraud was exacted. (Am. Compl. ¶¶ 1-9.) Specifically, Plaintiffs allege that Arnone made a fraudulent statement to the USPTO in 1979; and "Arnone falsely stated in his USPTO application that 'he believes himself to be the owner of the mark sought to be registered and that to the best of his knowledge and belief, no other person, firm, corporation or association has the right to use said mark in commerce.'" (Am. Compl. at ¶ 9-10.) Plaintiffs here do not rely on generic references or broad statements when stating their allegations, but, rather, inject precision into their fraud allegations by listing the approximate date on which Arnone allegedly perpetrated the fraud. They state that "[i]n or around 1979, knowing full well that he did not have the exclusive right to use the mark THE DUPREES, and fully aware that other members of the Group considered themselves to have at least an equal right to that of Arnone to use such mark, Arnone . . . filed an application to register the mark . . . in his own name . . . ." (Am. Compl. ¶ 9.) In addition, Plaintiffs have adduced sufficient evidence that Arnone "actually knew or believed that someone else had a right to the mark." *Marshak*, 240 F.3d at 196. This Court is satisfied that the complaint is plead with sufficient particularity as to "place the defendant on notice of the precise misconduct with which [he] is charged." *Frederico*, 507 F.3d at 200. (internal quotations omitted). Because Plaintiffs plead fraud with sufficient particularity, Defendant's Motion to Dismiss for failure to plead fraud with specificity as required by Fed. R. Civ. P. 9(b) is denied.

**Kelly's Standing to Bring a Cancellation Claim**

Section 14 of the Lanham Act provides that "any person who believes that he is or will be damaged . . . by the registration" may petition for cancellation of a trademark registration. 15 U.S.C. § 1064 (2006). A petitioner seeking to cancel a registration under Section 14 of the

Lanham Act needs to "plead and prove facts showing a real interest in the proceeding in order to establish standing." *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346, 349 (9th Cir. 1984) (internal quotations omitted). In other words, a petitioner "must show a real and rational basis for his belief that he would be damaged by the registration sought to be cancelled, stemming from an actual commercial or pecuniary interest . . . ." *Star-Kist*, 735 F.2d at 349. Furthermore, "the public interest is served . . . in broadly interpreting the class of persons Congress intended to be allowed to institute cancellation proceedings." *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1030 (C.C.P.A. 1982).

Section 45 of the Lanham Act states that "[a] mark shall be deemed 'abandoned' [w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127 (2006). "'To establish the defense of abandonment it is necessary to show not only acts indicating a practical abandonment, but an actual intent to abandon.'" *Marshak*, 240 F.3d at 198 (quoting *Saxlehner v. Eisner & Mendelson Co.*, 179 U.S. 19, 31 (1900)). Abandonment "must be stric[tly] prove[n]*.*" *Marshak*, 240 F.3d at 198. A party can establish "a prima facie case of abandonment . . . by proving nonuse in this country for two consecutive years." *Id*. at 198-99; 15 U.S.C. § 1127 (2006). However, "[t]he continuous use of [a] mark in connection with the commercial exploitation of [a] group's recordings in this country g[ives] rise to a strong inference of an intent not to abandon the mark." *Id*. at 199.

Kelly demonstrates a real interest in these proceedings by virtue of his claim to be an original member of the Duprees who performed with the band for 15 years. (Am. Compl. ¶ 1.) He also possesses a pecuniary interest in the outcome of this litigation given the fact that he was a signatory, both individually and as a member of The Duprees, to contracts, including the 1976 contract extension with Jerry Ross Music Corp., which entitled "[t]he individual members of the

10

Duprees . . . to royalty rights under the agreements." (Krenkel Cert., Ex. "J".) Because songs released under these contracts are currently sold in stores and online, a reasonable juror could infer that Kelly continues to receive royalties and, therefore, has an ongoing commercial interest in the mark. (Krenkel Cert., Ex. "A", "C", "E", "F", "J".) In addition, Kelly alleges sufficient facts to demonstrate that use of the mark has been continuous. Jerry Ross, for example, has stated that he has actively promoted the Duprees' name on behalf of all band members, Kelly included, from 1968 to present. (Krenkel Cert., Ex. "J".) A Duprees album on which Kelly performs has been released as recently as 2002 and albums featuring Kelly continue to be marketed online and in stores. It cannot be said, therefore, that Kelly has abandoned his interest in the Duprees mark because "[t]he continuous use of [a] mark in connection with the commercial exploitation of [a] group's recordings . . . g[ives] rise to a strong inference of an intent not to abandon th[at] mark[,]" *Marshak*, 240 F.3d at 199. As previously mentioned, Kelly also possesses the requisite "real interest" in the Duprees mark based on his role in the group and his financial stake in the continued sale and marketing of the Duprees' name and recordings. Because both criteria are satisfied, this Court finds that Kelly has standing to assert claims against Defendant based on fraudulent registration of the mark under Section 14 of the Lanham Act. Defendant's Motion to Dismiss Kelly's claims for lack of standing is denied.

### Statute of Limitations

Section 22 of the Lanham Act provides that registration of a mark on the principal register constitutes constructive notice of the registrant's claim of ownership. 15 U.S.C. § 1072. Therefore, Kelly had constructive notice of registration in 1981, when registration was granted for the mark. (Hawkins Decl., Ex. "B".)

11

**(i) Section 38 of the Lanham Act (15 U.S.C. § 1120), Common Law, and State Law Claims**

The Estate argues that Kelly's claim for damages based on fraudulent registration is barred by the statute of limitations and laches. (Def.'s Br. 27.)  The statute of limitations for damages claims based on fraudulent registration of a mark under Section 38 of the Lanham Act (15 U.S.C. § 1120) is measured by the corresponding state statute of limitations for common law fraud, which, under New Jersey law, is six years. *Beauty Time, Inc. v. VU Skin Sys.*, 118 F.3d 140, 143 (3d Cir. 1997); N.J.S.A. § 2A:14-1.  The New Jersey six-year statute of limitations similarly applies to common law claims for trademark infringement and both common and state law unfair competition claims. *See AT&T v. Winback & Conserve Program, Inc.,* 42 F.3d 1421, 1433 (3d Cir. 1994);  *Guardian Life Ins. Co. v. Am. Guardian Life Assurance Co.*, 943 F. Supp. 509, 517 (E.D.Pa. 1996); N.J.S.A. § 2A:14-1.  Thus, in order for the Section 38 claim, the common law trademark infringement and unfair competition claims, and the New Jersey statutory claim for unfair competition to lie, Kelly was required to have brought suit by 1987, six years from the date of Arnone's registration of the mark.  Because Kelly waited until 2008 to bring these claims, some 21 years after the statute of limitations had run, they are barred by the six-year statute of limitations.  Defendant's Motion to Dismiss Kelly's claim under 15 U.S.C. §1120 (Section 38 of the Lanham Act) is granted.  Defendant's Motion to Dismiss Kelly's common law trademark infringement and unfair competition claims, as well as Kelly's New Jersey statutory unfair competition claim, is also granted.[5]

**(ii) Section 14 of the Lanham Act (15 U.S.C. § 1064)**

---

[5] The Court notes Defendant's laches argument, and although valid, an analysis of said argument is unnecessary given the Court's position as to the statute of limitations.

The Third Circuit has held that actions to cancel a registration based on fraudulent procurement under Section 14 of the Lanham Act, unlike actions for damages under Section 38 of the Lanham Act, may be brought at any time and are not subject to a statute of limitations or laches defense. *Marshak*, 240 F.3d. at 193. Kelly's application to cancel the registration based on fraudulent procurement under Section 14 of the Lanham Act is thus not susceptible to the statute of limitations or laches defenses. Defendant's Motion to Dismiss Kelly's claim under 15 U.S.C. § 1064 (Section 14 of the Lanham Act) is denied.

### New Jersey DPMPL

The New Jersey DPMPL states "[a] person shall not advertise or conduct a live musical performance or production through the use of an affiliation, connection or association between the performing group and the recording group unless . . . [t]he performance or production is expressly authorized by the recording group." N.J. Stat. § 2A:32B-2 (2009). A performing group is defined as "a vocal or instrumental group seeking to use the name of another group that has previously released a commercial sound recording under that name." N.J. Stat. § 2A:32B-1 (2009). A recording group is defined as "a vocal or instrumental group, at least one of whose members has previously released a commercial sound recording under that group's name and in which the member or members have a legal right by virtue of use or operation under the group name without having abandoned the name or affiliation with the group." *Id*.

There remains an issue of fact as to whether the Estate had a valid, federally registered trademark at the time it licensed individuals to perform as the Duprees. As such, this issue is not yet ripe for decision. This issue should be presented to this Court again, if at all, after the validity of the Estate's trademark is determined. Therefore, Defendant's Motion to Dismiss Kelly's DPMPL claim is denied.

13

**Motion to Amend**

When deciding whether to grant a motion for leave to amend the complaint pursuant to Rule 15(a), "[a] general presumption exists in favor of allowing a party to amend its pleadings." *Del Sontro v. Cendant Corp., Inc.*, 223 F. Supp. 2d 563, 576 (D.N.J. 2002) (citing *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984), *cert. denied*, 469 U.S. 871 (1984)). Furthermore, the court should freely give leave when justice so requires. *Id*. However, leave to amend may be denied if the Court finds: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the non-moving party; or (4) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) (citations omitted).

Defendant argues that Plaintiffs' Motion to Amend should be denied on the basis of futility. Here, Plaintiffs' Amended Complaint cures the pleading deficiencies of the original complaint and allows certain claims to survive Defendant's Motion to Dismiss. Specifically, "the underlying facts [and] circumstances relied upon by [the P]laintiff may be a proper subject of relief, [so] he ought to be afforded an opportunity to test his claim[s] on the merits." *Forman*, 371 U.S. at 182. Furthermore, this Court does not find undue delay, bad faith, or undue prejudice. This Court has previously held that "the mere passage of time will rarely be a sufficient basis for denying leave to amend . . . . [A] 'non-moving party must do more than simply claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely.'" *Mantz v. Chain*, 239 F. Supp. 2d 486, 505-06 (D.N.J. 2002) (citing *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989)). Here, "it appears that the amendments sought by [Plaintiffs] would merely state explicitly what has been apparent to the parties throughout the

course of the proceedings in this litigation." *Mantz*, 239 F.Supp. 2d at 506. Plaintiff's Motion to Amend the complaint is, therefore, granted.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part. Plaintiff, Kelly's Motion to Amend the Complaint is GRANTED.

**S/SUSAN D. WIGENTON, U.S.D.J.**

cc: Madeline Cox Arleo, U.S.M.J.